IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 11-cv-00813-RBJ-CBS

DANIEL SELF,

    Plaintiff,

v.

KEVIN MILYARD, et al.,

    Defendants.

## ORDER

    Daniel Self, an inmate at the Sterling Correctional Facility of the Colorado Department of Corrections ("CDOC"), asserts constitutional claims and common law tort claims against various prison personnel and others. His claims fall into two separate parts, one being an incident in which he was resuscitated despite a Do Not Resuscitate ("DNR") directive, and the other being allegedly inadequate treatment for a wrist injury. The case is before the Court on a motion by five of the 14 named defendants to dismiss two of plaintiff's claims under Fed. R. Civ. P. 12(b)(6). [docket #23].

### Facts

    This statement of facts is based on the allegations in the First Amended Complaint. Mr. Self is serving a life sentence with no opportunity for parole. He suffers from bipolar disorder. On January 22, 2009, after speaking with defendant Gary Fortunato, a physician at the Sterling Correctional Facility, Mr. Self executed a DNR directive on a form provided to him by the prison's medical staff. The directive ordered "emergency medical services personnel, health care

providers, and other persons to withhold cardiopulmonary resuscitation in the even that [Mr. Self's] heart or breathing stops or malfunctions." First Amended Complaint ¶43. He alleges that defendants Fortunato, Gatbel Chamjock, a Physician's Assistant, and Kathy Lovell a nurse, promised that emergency responders would not initiate cardiopulmonary resuscitation on him under any circumstances, and that a copy of the directive would be placed in his medical chart.

Mr. Self alleges that, notwithstanding those assurances, these defendants did nothing to make other health professionals aware of the directive. He attributes this to a CDOC policy of not allowing inmates who sign a DNR directive to wear a unique bracelet, or necklace or other means of alerting emergency responders to the existence of the inmate's DNR directive.

On April 4, 2009 Mr. Self was found unconscious and unresponsive in his cell. Prison staff attempted unsuccessfully to revive him. Emergency Medical Technicians were called. Defendants Nicole Hensman and Daniel Schellenger, employees of defendant Lifecare, Inc., arrived, instituted life-saving measures, and transported Mr. Self to a hospital. The hospital's records indicate that, upon admission, he was "intubated despite presence of DNR." *Id.* ¶51. He experienced pain and discomfort while going through an extubation process, but his life was saved.

On October 5, 2009 Mr. Self sustained a wrist injury when he fell out of his top bunk. He alleges that the injury was mistreated, resulting in permanent disfigurement and disability, pain and suffering. The wrist injury is not the subject of the pending motion.

In addition to the prison's medical personnel and the emergency responders identified above, Mr. Self joins as defendants Kevin Milyard, then the warden at the Sterling Correctional Facility; Aristedes W. Zavaras, then the Executive Director of the CDOC; Cheryl Smith, then the Chief Medical Officer of the CDOC; Beverly Dowis, a Health Services Administrator at the

Sterling Correctional Facility; Physician Health Partners, Inc., a managed care provider for the CDOC, d/b/a Correctional Health Partners; Dr. Stephen Krebs, the Chairman of the Board of Physician Health Partners and the CEO and Chief Medical Officer of Correctional Health Partners; Julie Dorsey, the Regional Manager for Client Services of Physician Health Partners; and Karen Schmedeke, R.N., the Nurse Manager for Physician's Health Partners.

Mr. Self asserts eight claims in his 32-page First Amended Complaint: (1) all defendants violated in Eighth Amendment right to be free from cruel and unusual punishment by failing to honor his DNR directive; (2) certain that the defendants violated his Eighth Amendment rights by improperly treating his wrist injury; (3) defendants violated his Fourth Amendment right to due process by failing to honor his DNR directive; (4) negligent failure to train and supervise against certain defendants; (5) negligence against the emergency responder defendants; (6) battery against the emergency responder defendants; (7) intentional infliction of emotional distress against the individual emergency responders; and (8) negligent infliction of emotional distress against the emergency responder defendants.

**Standard of Review.**

Defendants Chamjock, Dowis, Krebs, Milyard and Smith move to dismiss the two constitutional claims arising from the failure to honor the DNR directive for failure to state a claim for relief upon which relief could be granted pursuant to Fed. R. Civ. P. 12(b)(6). For this purpose the Court must accept the well-pleaded allegations of the complaint as true and construe them in plaintiff's favor. However, the facts alleged must be enough to state a claim for relief that is plausible, not merely speculative. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct.

1937, 1949 (2009). Allegations that are purely conclusory need not be assumed to be true. *Id.* at 1951.

**Conclusions.**

<u>Claim One: Eighth Amendment Violation for Provision of Unwanted Medical Treatment</u>.

Plaintiff alleges that each of the moving defendants acted under color of state law, an allegation that defendants do not dispute. He alleges that "infringing on a prisoner's right to refuse medical treatment constitutes cruel and unusual punishment," because "ignoring Mr. Self's explicit intention to be free of certain medical interventions" constitutes "deliberate indifference to his serious medical needs." Defendants respond that the provision of medical services cannot qualify as an Eighth Amendment violation for lack of medical treatment; that plaintiff alleges negligence at most, which doesn't constitute an Eighth Amendment violation; and that defendants lacked the requisite personal participation to impose individual liability.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on persons convicted of a crime. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991). The Eighth Amendment's ban on cruel and unusual punishment prohibits: (1) deliberate indifference to an inmate's serious medical needs, and (2) conditions of confinement causing unnecessary and wanton infliction of pain." *Id*.

The Eighth Amendment applies to state action through the due process clause of the Fourteenth Amendment. To establish that a condition of confinement constitutes cruel and unusual punishment, an inmate must show both an objective component, i.e., that a prison deprivation was sufficiently serious (such as by denying the minimal civilized measure of life necessities) and a subjective component, i.e., that prison officials acted with a culpable state of

mind (some form of wanton conduct at least amounting to deliberate indifference as compared to inadvertence or good faith error). *Wilson v. Seiter*, 501 U.S. 294, 298-304 (1991).

"A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quotation omitted).

The Court agrees with the reasoning expressed by Judge McKenna in *Brown v. Ionescu*, 2004 WL 2101962 * 4 (S.D.N.Y. 2004)(unpublished). Plaintiff's claim is better described as a claim for violation of his Fourteenth Amendment right to refuse unwanted medical treatment. *Id.* While intubation and extubation were undoubtedly painful, they do not rise to the level of cruel and unusual punishment under the Eighth Amendment.

<u>Claim Three: Fourteenth Amendment Violation for Provision of Unwanted Medical Treatment</u>.

The moving defendants acknowledge that "a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment." *Cruzan v. Director, Missouri Department of Health,* 497 U.S. 261, 278 (1990). They argue, however, that (1) none of them is alleged to have knowingly or intentionally disregarded the DNR directive; (2) they did not personally participate in the alleged misconduct; and (3) in any event, they are entitled to qualified immunity as to plaintiff's claims for money damages.

<u>Intentional conduct.</u>

The due process clause "is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams,* 474 U.S. 327, 332 (1986). However, these defendants' argument that none of them participated in the resuscitation

efforts missed the point. Plaintiff alleges that these defendants, or at least some of them, established policies that resulted in the failure of the individuals who did participate in the resuscitation to be aware of the DNR directive.

Plaintiff alleges that Mr. Milyard, as the warden of the Sterling Correctional Facility, "has authority for the establishment and implementation of all policies and procedures at SCF." First Amended Complaint ¶5. Ms. Smith, as CDOC's Chief Medical Officer, had the responsibility of "monitoring and directing the total process by which health care services are provided to prisoners. *Id.* ¶7. Dr. Krebs, as the Chairman of the Board of Physician Health Partners and CEO and Chief Medical Officer of Correctional Health Partners, "was responsible for ensuring delivery of healthcare that meets or exceeds the medical standard of care" for Mr. Self and other inmates. *Id.* ¶16. Taking those allegations as true and construing them in plaintiff's favor for purposes of a motion to dismiss, these individuals collectively were responsible for prohibiting the use of bracelets or necklaces that would readily identify an inmate with a DNR directive, or, if bracelets and necklaces create an undue safety or security risk, then for failing to institute alternative procedures designed to assure that prison staff would know of and honor such a directive.

Mr. Chamjock is in a different category. Plaintiff alleges that he was "responsible for documenting Mr. Self's DNR status so that it would be accessible and available to other medical staff and to EMT's." *Id.* ¶10. Even construing the First Amended Complaint in plaintiff's favor, however, there is nothing that even arguably alleges that Mr. Chamjock's failure adequately to document his DNR status was intentional. Accordingly, the Court finds that plaintiff has not alleged a colorable due process claim against him.

Likewise, the Court concludes that plaintiff has not alleged a colorable due process claim relating to the DNR directive against Ms. Dowis. Her responsibility, according to the First Amended Complaint, was the "scheduling of doctor's appointments and instituting policies and procedures that adequately ensure Mr. Self and other inmates at SCF are scheduled for and transported to appointments outside SCF." *Id.* ¶11. Plaintiff's response brief concedes that he has not stated an Eighth Amendment claim against Ms. Dowis. [#33] at 10. He implicitly makes the same concession with respect to his Fourth Amendment claim by making no attempt to justify the claim as to her.

<u>Personal Participation</u>

For the same reasons, the Court concludes that plaintiff has sufficiently alleged that defendants Milyard, Smith and Krebs had responsibility for policies or procedures concerning the administration of medical care to inmates at the Sterling Correctional Facility to survive a Rule 12(b)(6) motion.

<u>Qualified Immunity</u>.

These defendants argue that plaintiff's claims against them for money damages are barred by the doctrine of qualified immunity. Under that doctrine, "governmental officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 407 U.S. 800, 818 (1982).

Because plaintiff has not sufficiently alleged an Eighth Amendment violation arising from the failure to honor the DNR directive, the qualified immunity issue is moot as to the First Claim. However, plaintiff did adequately assert a Fourth Amendment violation against defendants Milyard, Smith and Krebs in his Third Claim. Accordingly, the question for qualified

immunity purposes is whether the asserted violation is one of which a reasonable person would have known.

In *Toevs v. Reid*, 646 F.3d 752, 755 (10th Cir. 2011), the court concluded that CDOC officials violated the due process rights of an inmate at the Colorado State Penitentiary by failing to provide meaningful reviews of his progress in its Quality of Life Program. *Id.* at 759-60. This was a six-level program that provided incentives to the inmate to behave appropriately and earn his way out of administrative segregation. Accordingly, the inmate satisfied the first of the two requirements for avoiding the application of qualified immunity.

However, "[o]rdinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Id.* at 761 (quotation omitted). A 1983 Supreme Court decision clearly established that prisoners cannot be placed in administrative segregation indefinitely without receiving meaningful periodic reviews, but the Tenth Circuit had not previously interpreted that requirement to require officials to inform the prisoner of the reasons for his continued placement so as to provide a guide for future behavior. Likewise, the Tenth Circuit had not previously considered the due process implications of a stratified incentive program. Therefore, "we cannot conclude that the state of the law from 2005 to 2009 gave defendants fair warning that the QLLP review process was not meaningful, or that the lack of reviews at QLLP level 4 through 6 was a due-process violation." *Ibid.* Therefore, the court affirmed the trial court's grant of summary judgment to the defendants under the qualified immunity doctrine.

The same reasoning is applicable here. Plaintiff has not shown, nor has he made an effort to show, that either the Supreme Court or the Tenth Circuit or any other jurisdiction has held that

the failure of prison officials to permit bracelets, necklaces or other means of alerting individuals responding to a medical emergency that the inmate has executed a DNR directive is a violation of the inmate's constitutional rights. In the absence of such "fair warning," the Court concludes that the law was not clearly established, and that Mr. Milyard, Ms. Smith and Dr. Krebs are entitled to the protection of qualified immunity.

**Order.**

Defendants' Partial Motion to Dismiss [Doc. #23] is GRANTED in part and DENIED in part. It is granted with respect to plaintiff's Claim One as to all moving defendants. It is granted as to Claim Three as to defendants Dowis and Chamjock. The Court also holds that, as to Claim Three, defendants Milyard, Smith and Krebs are entitled to qualified immunity against plaintiff's claim for money damages.

DATED this 7th day of May, 2012.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge